FILED
IN OPEN COURT
NOV - 9 2021
CLERK, U.S. DISTRICT COURT
NORFOLK, VA

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
NORFOLK DIVISION

UNITED STATES OF AMERICA

v.

HOLLIS P. FORTEAU,

Defendant.

Case No. 2:21cr28

STATEMENT OF FACTS

The United States and the defendant, HOLLIS P. FORTEAU, a/k/a Werk, a/k/a Werkem, a/k/a Workem Streets (hereinafter, "the defendant"), agree that at trial, the United States would have proven the following facts beyond a reasonable doubt with admissible and credible evidence:

1. In December 2019 and January 2020, the defendant, co-defendants Monique A. Thomas, Brandi K. Reaves, and Ayana A. Torres (collectively, "the defendants"), along with at least three unnamed co-conspirators, including ~~H.F.~~ H.I., traveled from Pennsylvania to Virginia on two separate trips. The purpose of the trips to Virginia was to obtain real currency through the use of counterfeit notes.

2. On both trips, Thomas, Reaves, and Torres traveled in a vehicle that Thomas had rented in December 2019 in Philadelphia, Pennsylvania; the defendant and ~~H.F.~~ H.I. were in another rental vehicle that Thomas had also rented. Thomas and the defendant drove the respective rental vehicles. On the way back home from Virginia in January 2020, the defendants and co-conspirators all traveled in the defendant's rental vehicle.

3. On these trips, the defendants and co-conspirators would purchase items from a retailer at one branch location with $100 counterfeit notes. Then, to convert the counterfeit

notes into valid, legal currency, they would return those items at another branch of the same retailer, at a different location, in exchange for cash.

4. Unlike the other defendants and co-conspirators, the defendant did not himself typically go into the stores to pass the counterfeit notes, rather, he (along with Thomas) would direct those in his car which stores to go into. He required all of the co-defendants and co-conspirators to give him a cut of the genuine currency they obtained.

5. The defendant made the $100 counterfeit notes by printing the images of genuine $100 bills onto genuine $1 bills that he had bleached, or "washed." The defendant used genuine $1 bills because the $100 counterfeit notes would feel genuine to the touch and could still appear genuine if store employees marked them with a counterfeit detection pen. The counterfeit notes would, however, typically be detected if run through a scanning machine that some stores had, so the defendants targeted stores that did not use such scanning machines. The defendant provided the counterfeit notes to the individuals in his vehicle; Thomas would let him know when she needed more counterfeit $100 notes for the individuals in her vehicle, and the defendant would meet with her and give them to her in a white envelope.

6. To ensure a consistent supply of counterfeit notes, the defendant traveled with a printer and a laptop that he used to make the counterfeit notes in hotel rooms. On one of the trips, he directed Torres to go into a store to purchase a specific printer—using counterfeit notes—so that he could use it for the manufacture of additional counterfeit notes.

7. On January 5, 2020, a Sunglass Hut employee followed the car used by Thomas, Reaves, and Torres, after Reaves used counterfeit $100 notes at the store in Williamsburg, Virginia, where the employee worked. The employee followed that car to a nearby parking lot and called the James City County police. The police approached the car, and employees from

various stores at the Williamsburg outlet stores arrived and positively identified Thomas, Reaves, and Torres as individuals who had used counterfeit $100 notes at multiple stores. In the car, police found approximately $1,900 in $100 counterfeit notes as well as numerous retail items purchased with counterfeit notes on the January trip to Virginia, which items cost approximately $5,400 in total. Further, Thomas had in her purse legal currency in the amount of approximately $1,408.

8. The James City County police arrested Thomas, Reaves, and Torres, and they were detained overnight. On January 6, 2020, Thomas placed a recorded jail call to Forteau, which Forteau paid for with a Navy Federal Credit Union card registered to him. This credit card showed he had been in the Hampton Roads area of Virginia several days prior to January 5, 2020. On the call, Thomas stated that she "had hit Journeys for 3," which was a reference to the three counterfeit $100 notes she had used at a Journeys store the prior day. Referring to the legal currency in her purse, she stated that "[e]verything I made I lost," meaning that she had obtained that currency by returning items purchased with counterfeit notes, but that it had been seized by the police.

9. On this call, the defendant stated that he and the co-conspirators in his car had also been in the same parking lot where the police arrived and had stayed there until Thomas, Reaves, and Torres were arrested and their car was impounded. He also confirmed he had been on a live phone call with Thomas during most of the police interaction. Referring to the genuine money seized from Thomas, the defendant lamented losing "a week's full of money." He also said, "[w]e all lost paper."

10. The defendant also repeatedly expressed displeasure with Torres, whom he believed was responsible for the women being caught by police. He stated, "she felt the vibe

H.F.

[*i.e.*, felt something was off in the store] but didn't tell you and jeopardize[d] everybody," and explained that "this is why I tell people feel your own vibes." He continued, "this is why I yell at people. . . . Like if you would've said something from the jump n****s would've been out on the highway." The defendant also said Torres was "definitely going to pay a price for this. . . . What's worse, me smacking the shit out of you or being hit like this [*i.e.*, being arrested]."

11. After Thomas, Reaves, and Torres were released from custody, the defendant picked them up, and they all traveled back to Pennsylvania in the remaining rental vehicle. On the way back, the group made additional transactions using counterfeit notes and returned items previously purchased with counterfeit notes.

12. On a public social media account, the United States Secret Service located a video of the defendant in early 2021 repeatedly throwing $1 bills in the air in a hotel room with a printer visible in the background. "Tags" in the video indicate that ~~H.F.~~ was also present, although his face is not visible in the video.

13. On September 3, 2021, the defendant was arrested in Philadelphia, Pennsylvania, pursuant to an arrest warrant for the charge against him in the pending superseding indictment. He was driving a rented Kia Sorento and had planned to travel out of state for the upcoming weekend. At his arrest, law enforcement found in his possession a printer, a laptop, a roll of approximately 29 bleached $1 notes, one counterfeit $100 note, and numerous ink cartridges.

14. After his arrest, the defendant was detained. He made numerous calls to his romantic partner, who still had the rental vehicle that the defendant was driving when he was arrested. On several calls, he directed her to remove certain contraband from the vehicle. Specifically, he told her to a do an "oil change" on both the passenger and driver's side. Several

days later, he told her to ask another individual[1] help her "clean" the Kia Sorento before she returned it. The defendant told her there were things on the driver's side and back passenger's side of the Sorento that needed to be "cleaned." The defendant also asked her if she had found his Swisher Sweets, which are cigars, and described hiding something amongst the Swisher Sweets because the item was too "hot." The government obtained a search warrant for the Kia Sorento, which it executed on September 9, 2021. In the Kia Sorento, law enforcement found a Swisher Sweets package in the center console containing counterfeit $100 notes, and more counterfeit $100 notes hidden behind the car's door panels on the passenger and driver's side. In total, the Kia Sorento contained approximately 110 $100 notes, all of which the defendant had manufactured and intended to use to obtain genuine currency and/or items of value.

15. In or around December 2019 and January 2020, in the Eastern District of Virginia and elsewhere, the defendant, Monique A. Thomas, Brandi K. Reaves, Ayana A. Torres, and others known and unknown, knowingly and intentionally conspired to commit the following offense against the United States: To possess, pass and utter, with intent to defraud, counterfeit obligations of the United States, in violation of Title 18, United States Code, Section 472.

16. This statement of facts includes those facts necessary to support the plea agreement between the defendant and the United States. It does not include each and every fact known to the defendant or to the United States, and it is not intended to be a full enumeration of all of the facts surrounding the defendant's case.



[1] This was the same individual who posted the social media video described above.

17. The actions of the defendant, as recounted above, were in all respects knowing and deliberate, and were not committed by mistake, accident, or other innocent reason.

Respectfully submitted,

Jessica D. Aber
United States Attorney

By: ______________________________
E. Rebecca Gantt
Andrew Bosse
Assistant United States Attorneys

After consulting with my attorney and pursuant to the plea agreement entered into this day between the defendant, HOLLIS P. FORTEAU, and the United States, I hereby stipulate that the above Statement of Facts is true and accurate, and that had the matter proceeded to trial, the United States would have proved the same beyond a reasonable doubt.

HOLLIS P. FORTEAU

I am Daymen Robinson, the defendant's attorney. I have carefully reviewed the above Statement of Facts with him. To my knowledge, his decision to stipulate to these facts is an informed and voluntary one.

Daymen Robinson, Esq.
Attorney for HOLLIS P. FORTEAU