IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CRIMINAL NO. 2:21-cr-28 |
| | ) | |
| HOLLIS P. FORTEAU, | ) | |
| | ) | |
| Defendant. | ) | |

**POSITION OF THE UNITED STATES WITH RESPECT TO SENTENCING**

The United States of America, by and through its attorneys, Jessica D. Aber, United States Attorney for the Eastern District of Virginia, and E. Rebecca Gantt, Assistant U.S. Attorney, offers the following with respect to the sentencing factors under 18 U.S.C. § 3553(a) and the U.S. Sentencing Guidelines ("USSG" or "guidelines") for defendant Hollis P. Forteau.

For years, Mr. Forteau has produced $100 counterfeit bills, to the tune of as much as $235,000. Despite his prior convictions for counterfeiting activity in 2015 and the arrests of his co-defendants in this case in early 2020, he continued to make counterfeit money right up to his arrest in this case in September 2021. And after that arrest, he attempted to have the evidence of his crimes destroyed. The government therefore recommends that the Court sentence Mr. Forteau to the statutory maximum penalty of 60 months of incarceration, which is below the (restricted) advisory guidelines range.

There are no outstanding objections to the Presentence Investigation Report ("PSR") that impact the advisory guidelines range. The Probation Officer correctly determined the advisory guidelines range as 70 to 87 months of imprisonment, resulting from an offense level of 21 and criminal history category of V.

**I.      Procedural Background**

On September 1, 2021, the grand jury returned a four-count superseding indictment against the defendant and two co-defendants. ECF No. 47. The defendant was named in one count, Count One: conspiracy to possess and utter counterfeit obligations, in violation of 18 U.S.C. § 371. He was arrested the Eastern District of Pennsylvania on September 3, 2021, and has remained in federal custody since then. On November 9, 2021, he pleaded guilty before the Court to Count One of the superseding indictment.

On February 4, 2022, the U.S. Probation Office filed a PSR which calculated the defendant's total offense level as 21 and his criminal history category as V, resulting in a guidelines range of 70 to 87 months of imprisonment. ECF No. 107 ¶¶ 106, 107. Both parties provided additional information, which is included in the sentencing PSR. ECF No. 115. The government had no objections to the PSR; the defendant has one unresolved objection which does not affect the advisory guidelines range, offense level, or criminal history category.

**II.     Standards Governing Sentencing**

In fashioning a criminal sentence, a district court must "first calculate the applicable [U.S. Sentencing] Guidelines range." *United States v. Pauley*, 511 F.3d 468, 473 (4th Cir. 2007). After calculating the guidelines range, the district court "must give both the government and the defendant 'an opportunity to argue for whatever sentence they deem appropriate.'" *Id*. (quoting *Gall v. United States*, 552 U.S. 38, 49 (2007)). The district court must then consider all of the factors set forth in 18 U.S.C. § 3553(a) to determine whether those factors support the sentence requested by either party. *Id*. (citing *Gall*, 552 U.S. at 49). In doing so, the district court may not presume that a sentence within the guidelines range is reasonable. *Id*. (citing *Gall*, 552 U.S. at

50); *see also Nelson v. United States*, 555 U.S. 350, 351-52 (2009). Rather, the court "must make an individualized assessment based on the facts presented." *Gall*, 552 U.S. at 50.

In the event that the district court imposes a sentence outside the guidelines range, it "must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance." *Pauley*, 511 F.3d at 473 (quoting *Gall*, 552 U.S. at 50). After deciding an appropriate sentence, the court "must adequately explain the chosen sentence to allow for meaningful appellate review and to promote the perception of fair sentencing." *Gall*, 552 U.S. at 50. The Fourth Circuit has also held that "a sentencing court must address the parties' nonfrivolous arguments in favor of a particular sentence, and if the court rejects those arguments, it must explain why in a sufficiently detailed manner to allow this Court to conduct a meaningful appellate review." *United States v. Blue*, 877 F.3d 513, 519 (4th Cir. 2017).

### III. Objections to the Presentence Investigation Report

There is one unresolved objection to the PSR, which is to the notation of the defendant being affiliated with the Bloods gang. Because this disputed fact does not affect the advisory guidelines range, the government recommends that the Court leave it as unresolved. ECF No. 115 at 40.

### IV. The Statutory Sentencing Factors

A. <u>The Nature and Circumstances of the Offense (18 U.S.C. § 3553(a)(1))</u>

The defendant came to the attention of the United States Secret Service when his three co-defendants were arrested by state law enforcement after using counterfeit $100 notes at the outlet stores in Williamsburg, Virginia. Subsequent investigation revealed that they, the defendant, and at least three other co-conspirators would travel to the Hampton Roads area from the Philadelphia area in rental cars, using counterfeit $100 notes to purchase items at retail stores, and returning

3

them those items at other store locations for genuine currency. The defendant was the leader of the conspiracy. He traveled with a printer and bleached $100 notes, which he used to manufacture the counterfeit currency. He would provide this to his co-conspirators, in exchange for them giving him a substantial cut of their proceeds.

After the three co-defendants were arrested in Williamsburg in January, 2020, they were detained overnight. One of them placed a recorded call to the defendant, during which he expressed his anger at one of the women, Ayana Torres, whom he believed was responsible for them being caught. He discussed "smacking the shit out of" her, and indeed, Ms. Torres reported that he did hit her upon her release from custody. He also told her to remember that he had a copy of her identification card and knew where she lived, and advised her not to speak to the government about the case. Ms. Torres appeared at her plea hearing in this case before U.S. Magistrate Judge Douglas E. Miller in tears, because of her fear at what the defendant might do to her.

The defendant was eventually charged in a superseding indictment in this case and arrested in September 2021. In his car at his arrest was a printer, numerous bleached $1 notes, and a counterfeit $100 bill. After he directed his girlfriend to locate and either hide or destroy certain evidence on recorded jail calls, the government obtained a search warrant to secure that evidence, which yielded 110 counterfeit $100 notes hidden behind the door panels and in a box of cigars in the rental car he was driving at his arrest. Agents also found a thumbdrive containing images of counterfeit notes, which the defendant presumably used for printing onto the bleached $1 notes.

The counterfeiting activities in Williamsburg and at the defendant's arrest are just the tip of the iceberg. The United States Secret Service maintains a database of counterfeit currency turned in to them by banking institutions. A search therein of bills similar to those used in this case reveals a total of $235,600 in counterfeit notes.

    B. <u>The History and Characteristics of the Defendant (18 U.S.C. § 3553(a)(1))</u>

    The defendant is 38 years old and was born in New York. He was raised principally by his mother in the Bronx. His parents were not married; his father was never a stable presence in his life, and he died when the defendant was 12 or 13 years old. The defendant was "raised in church" and reports a childhood free of abuse and neglect. His mother worked hard to provide for him. He has four maternal half-siblings, three brothers and a sister, three of whom live in New Jersey and one of whom lives in New York. He also has a younger paternal half-sister who lives in Georgia. His mother passed away in May 2021. The defendant was living in New Jersey before his arrest.

    The defendant has three children, all teenagers. One seventeen-year-old son and his sixteen-year-old daughter live with their mother in New Jersey or New York. *See* PSR ¶¶ 71, 73. Before his incarceration for this offense, his daughter would live with him during the week, and with her mother on the weekends. His other seventeen-year-old son lives with his mother in Yonkers, New York. The defendant has a close relationship with all of his children.

    The defendant reports obtaining a GED in 2004 or 2005 (age 21 or 22), but the Probation Officer was unable to verify the same. He has some employment history, but it is interspersed with large gaps due to incarceration and, perhaps, the money he was obtaining from his counterfeiting activities. Between 2003 and 2007, the defendant worked doing data entry at a medical imaging company in New Jersey. From 2007 to 2008, he worked as a delivery driver for an auto parts company in New Jersey. From 2008 to 2011, he worked as a sandblaster, forklift operator, and data enterer at a company in New Jersey. Since then, the only reported employment history has been as a tattoo artist in 2020 and 2021.

Regarding the defendant's physical health, medical records indicate that the defendant has Type II diabetes and mild asthma. PSR ¶ 78. His diabetes was not well-controlled prior to his incarceration. *Id.* ¶ 80. On January 22, 2022, he was seen at a clinic at Western Tidewater Regional Jail for issues relating to his diabetes. *Id.* ¶ 78. After he explained he had been eating foods heavy in starch while incarcerated, staff educated him extensively regarding appropriate diabetic meals. Regarding his mental health, the defendant has not been diagnosed with any mental health conditions. He has previously been referred to counseling as a young teen after the death of his father, and later while on probation and parole.

As to substance abuse, the defendant reported smoking marijuana daily beginning as a teenager, other than during periods of probation. He also reported taking Percocet that he would obtain "off the street" on a daily basis for pain. In recent years, he has also abused alcohol.

The defendant's criminal history is extensive and spans multiple jurisdictions, resulting in a criminal history category of V. Although he reports a juvenile criminal history, the Probation Officer was not able to find a record of the same. PSR ¶ 32. By age 20, he had already accumulated three convictions involving theft and fraud, including two charges involving a forged instrument and one burglary charge. Thereafter, between 2005 and 2009, he was convicted on three occasions for a firearms charge, disorderly conduct, and harassment. His criminal conduct then turned to controlled substances: possession of a controlled substance in 2010, and, in 2013, obtaining prescriptions for controlled substances by fraudulently using the identities of physicians. It appears from the PSR that the most the defendant had to serve for any of these preceding convictions was three days of imprisonment.

In 2015, the defendant was convicted of his first offense involving counterfeit currency. Specifically, surveillance footage revealed he used sixteen counterfeit $100 notes at a casino in

New Jersey. He served less than a year in custody for that offense. Also in 2015, he was convicted for having purchased items at retail stores at a mall in Pennsylvania with counterfeit $100 bills. Again, it appears from the PSR that he was imprisoned only several months for that offense. The defendant's final conviction was for disorderly conduct in 2020, a month after his co-defendants were arrested for using counterfeit notes in Williamsburg, Virginia. The PSR also documents a string of arrests that did not lead to convictions.

C. The Need to Reflect the Seriousness of the Offense, to Promote Respect for the Law, and to Provide Just Punishment (18 U.S.C. § 3553(a)(2)(A))

A substantial sentence of 60 months of imprisonment is necessary to promote respect for the law and reflect the seriousness of the defendant's conduct. The defendant's background reflects that the bulk of his adult life has been consumed with criminal activity and shows his complete disrespect for the law. A substantial sentence is also warranted because of the gravity of his conduct: not only is he responsible to losses at numerous stores across the country, but he drew numerous other individuals into his activities and directed their actions, controlling at least one of them with physical violence and threats. Most of the individuals he involved in his crimes had substantially less serious criminal backgrounds than the defendant.

D. The Need to Afford Adequate Deterrence & to Protect the Public from Further Crimes (18 U.S.C. § 3553(a)(2)(B), (C))

The maximum available sentence of 60 months is supported by the need for specific deterrence, which will protect the public from further crimes of the defendant. Most notably, the defendant persisted in his counterfeiting activities for years, even after his own convictions for the same on two occasions, and even after the arrest of his co-defendants in January 2020. He even continued criminal activity after his arrest in this case by attempting to obstruct justice to have pertinent evidence destroyed. His criminal history, while extensive, reveals that over and over

again the defendant has received a series of slaps on the wrist. He needs a lengthy period of incarceration to deter him from returning to a his life of crime.

E. The Need to Provide Needed Correctional Treatment in the Most Effective Manner (18 U.S.C. § 3553(a)(2)(D))

While in custody, the defendant would benefit from substance abuse treatment. He would also benefit from educational opportunities, including possibly a GED and, if he has already attained that, post-secondary and vocational training opportunities.

F. The Kinds of Sentences Available (18 U.S.C. § 3553(a)(3))

The available statutory sentence for the defendant's crime of conviction, 18 U.S.C. § 371, is up to five years of imprisonment. A sentence of probation is statutorily authorized for one to five years. 18 U.S.C. § 3561(c)(1). A term of supervised release may be imposed for up to three years. 18 U.S.C. § 3583(b).

G. The Sentencing Guidelines and Need to Avoid Unwarranted Disparities (18 U.S.C. § 3553(4)-(6))

As the government's recommended sentence is below the advisory sentencing guidelines range, it will not create any unwarranted disparities for the defendant. Regarding any sentences of co-defendants, the defendant is the first defendant to be sentenced in this case. The government anticipates that his co-defendants, although they pleaded guilty to violations of statutes carrying higher maximum penalties, will ultimately be attributed with guidelines ranges substantially below 60 months because of lower criminal histories, lower loss amounts, and/or lack of a leadership role.

H.  <u>The Need to Provide Restitution (18 U.S.C. § 3553(a)(7))</u>

In his plea agreement, the defendant agreed that restitution was mandatory.  ECF No. 83 ¶ 9.  The government will present a proposed restitution order to the Court reflecting repayment to the affected victim retail stores at the sentencing hearing.

**V.   Supervised Release Conditions**

To comply with the Fourth Circuit's decision in *United States v. Rogers*, 961 F.3d 291 (4th Cir. 2020), and *United States v. Singletary*, 984 F.3d 341 (4th Cir 2021), the government requests that the Court orally pronounce all conditions of supervised release other than those specifically designated as mandatory under 18 U.S.C. § 3583(d).  In addition to an oral pronouncement of the individual conditions, compliance with *Rogers* may be achieved by oral reference on the record to another document, such as the PSR.  *Rogers*, 961 F.3d at 299.  Here, the U.S. Probation Office has outlined its recommended supervised release conditions on pages 20 through 22 of the PSR.

**VI.   Conclusion**

For the reasons stated above, the government submits that a sentence of imprisonment of 60 months is sufficient, and not greater than necessary, to satisfy the factors set forth in 18 U.S.C. § 3553(a).

          Jessica D. Aber
          United States Attorney

By:   /s/
          E. Rebecca Gantt
          Assistant United States Attorney
          VSB No. 83180
          101 West Main Street, Suite 8000
          Norfolk, Virginia 23510
          Tel. - 757-441-6350
          Fax - 757-441-6689
          E-mail Address – rebecca.gantt@usdoj.gov

## **CERTIFICATE OF SERVICE**

I hereby certify that on March 4, 2022, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to counsel of record who are users of the CM/ECF system.

I further certify that on March 4, 2022, I will send an electronic copy of the foregoing to the following:

Tara R. Gill<br>
Senior United States Probation Officer

/s/
E. Rebecca Gantt
Assistant United States Attorney
101 West Main Street, Suite 8000
Norfolk, Virginia 23510
Tel. - 757-441-6350
Fax - 757-441-6689
E-mail Address – rebecca.gantt@usdoj.gov